

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AUNDREA LANETTE MASON-WATTS, | § § § § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:19-CV-580-Y |
| v. | § § | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | § § § § | |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Aundrea Lanette Mason-Watts ("Watts") filed this action pursuant to Section 205(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). On June 17, 2014, Watts proactively applied for DIB and alleged that her disability began on April 10, 2013. (Transcript ("Tr.") 16, 205-06.) Watts' application was denied initially and on reconsideration. (Tr. 16, 78-110.) Watts then requested a hearing before an administrative law judge ("ALJ"). (Tr. 16, 111-16.) On March 16, 2018, a hearing was held before the ALJ, and, on May 1, 2018, the

1

ALJ found that Watts was not disabled within the meaning of the SSA. (Tr. 13-77.)[1] Watts filed a written request for review of the ALJ's decision to the Appeals Council. (Tr. 202-03.) On March 28, 2019, the Appeals Council denied Watts' request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 6-10.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[2] Fourth, if disability cannot be found based on the claimant's

---

[1] Watts had two hearings before an ALJ. (Tr. 34-77.) The first, dated September 6, 2017, was postponed to March 16, 2018 so that Watts' attorney could be present. (Tr. 67-77.)

[2] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

2

medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will

carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Watts presents the following issues: (1) whether the ALJ substituted his own judgment for that of the medical opinion evidence of record; (2) whether the ALJ erred in failing to incorporate functional limitations into Watts' RFC determination for her carpal tunnel syndrome; and (3) whether the ALJ failed to properly consider opinion evidence in determining Watts' credibility. (Plaintiff's Brief ("Pl.'s Br.") at 1-2.)

### IV. ALJ DECISION

On May 1, 2018, the ALJ concluded that Watts was not disabled within the meaning of the SSA. (Tr. 13-27.) At step one, the ALJ found that Watts had not engaged in substantial gainful activity since her alleged onset date of April 10, 2013. (Tr. 18-19.) At step two, the ALJ found that Watts had the following severe impairments: "right shoulder rotator cuff tear, bicipital tendinosis, and osteoarthritis, status post arthroscopic surgery and capsular release; left shoulder rotator cuff tear and osteoarthritis; right carpal tunnel syndrome." (Tr. 19 (emphasis omitted).) At step three, the ALJ determined that Watts did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 20; *see* Tr. 20-21.) As to Watts' residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except that she can occasionally push and pull with the right upper extremity. The claimant can occasionally perform overhead reaching with the right upper extremity and frequently perform overhead reaching with the left upper extremity.

(Tr. 21 (emphasis omitted).)

4

At step four, the ALJ found that Watts was unable to perform any past relevant work. (Tr. 25.) Subsequently, at step five, the ALJ found that there are jobs that existed in significant numbers in the national economy that Watts could perform. (Tr. 26-27.) Accordingly, the ALJ found that Watts was not disabled as defined in the SSA from April 10, 2013 through May 1, 2018, the date of the ALJ's decision. (Tr. 27.)

## V. DISCUSSION

### A. RFC Determination

In her brief, Watts argues that the ALJ erred in substituting his own judgment in making the RFC determination for that of the medical opinion evidence of record. (Pl.'s Br. at 3-6.) Specifically, citing to *Ripley v. Chater*, 67 F.3d 618 (5th Cir. 2003) and several other cases, Watts states:

> State Agency medical consultants evaluated this matter at the initial and reconsideration levels. These consultants determined that the Plaintiff had severe impairments of dysfunction of major joints. (Tr. 82, 94). The State Agency consultants concluded that Ms. Mason-Watts has manipulative limitations of limited overhead reaching with the right upper extremity (Tr. 83, 96). They did not find any limitation with regard to use of the left upper extremity.
>
> The ALJ rejected these opinions. The ALJ found that the Plaintiff has the severe impairment of left shoulder rotator cuff tear and osteoarthritis (Tr. 19). The ALJ agreed with the State Agency medical consultants that the Plaintiff is limited to only occasional overhead reaching with the right upper extremity, but determined that she was limited to frequent overhead reaching with the left upper extremity (Tr. 21). However, there is no medical opinion evidence of record describing the degree of limitation or Plaintiff's residual functional capacity when considering her left shoulder rotator cuff tear and osteoarthritis. . . .
>
> . . . .
>
> How did the ALJ determine that the Plaintiff can reach overhead frequently with the left upper extremity? The answer is[] the ALJ substituted his own medical judgment, which he is not patently qualified to do. Having rejected the medical

>opinions of record, there is an "evidentiary deficit" which the ALJ attempted to improperly fill with his own lay opinion of residual functional capacity. . . .

(Pl.'s Br. at 3-5.)

An individual's RFC describes what an individual can do despite her limitations. SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).[3] It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2.

RFC is not the least an individual can do but the most. *Id.* The RFC is a function by function assessment, with both exertional and non-exertional factors considered, and is based on all of the relevant evidence from the record. *Id.* at *3-6. The ALJ determines a claimant's RFC. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as fact finder has the sole responsibility for

---

[3] The Court notes that several of the regulations and applicable SSRs governing social security cases were amended or rescinded in 2017. *See, e.g.*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017); 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016). These new rules generally apply to claims filed on or after January 17, 2017 or March 27, 2017, depending on the regulation, and so are not applicable to this case. *Id.* Thus, any cites (unless otherwise noted) will be to the old rules that are applicable to claims filed prior to March 27, 2017.

weighing the evidence and may choose whichever physician's diagnosis is more supported by the record.").

In this case, in making the RFC determination, the ALJ, as set forth above, stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except that she can occasionally push and pull with the right upper extremity. The claimant can occasionally perform overhead reaching with the right upper extremity and frequently perform overhead reaching with the left upper extremity.

(Tr. 21 (emphasis omitted).) The ALJ, in making this determination stated, *inter alia*:

> I considered the findings of tenderness, decreased range of motion, and positive impingement signs in both shoulders, as well as the objective evidence of right carpal tunnel syndrome, in assessing a residual functional capacity for light work with occasional pushing, pulling, and overhead reaching with the right upper extremity, and frequent overhead reaching with the left upper extremity. However, the claimant's generally 4/5 or better upper extremity strength, as well as her normal or only mildly decreased range of motion on examinations after her second surgery, does not support the debilitating limitations she alleged.
>
> . . . .
>
> As for the opinion evidence, in February 2015, Nawal Abdelmessieh, M.D., the State agency medical consultant, concluded that the claimant could lift and carry up to 25 pounds occasionally and 10 pounds frequently, but could only perform occasional overhead reaching with the right upper extremity. On reconsideration in August 2015, James Paulino, M.D., limited the claimant to light work with occasional pushing and pulling using the right upper extremity, as well as occasional overhead reaching on the right. I have given the opinions of the State agency medical consultants, particularly Dr. Paulino, considerable weight. Drs. Abdelmessieh and Paulino reviewed all of the available evidence, and their opinion was based on that review, as well as their knowledge of the disability program and its requirements. Additionally, these opinions are largely consistent with the medical evidence of record, showing generally normal or near-normal strength.
>
> In February 2014, [Matthew Pepe, M.D. ("Dr. Pepe")] limited the claimant to light duty work, involving lifting no more than 25 pounds, with no overhead work with the right upper extremity. In June 2014, Dr. Pepe tool [sic] the claimant off-work, and in July 2014 he declared her "permanently and totally disabled." In September 2014, Dr. Pepe said that the claimant had permanent restrictions on overhead lifting, reaching, and firing a shotgun. Pursuant to SSR 96-02p, a treating source's opinion may be entitled to controlling weight if it is well supported by

7

medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record. Dr. Pepe's opinions are not entitled to controlling weight in this case.

Initially, a statement that an individual is disabled or cannot work relates to a matter reserved to the Commissioner, and is entitled to no particular significance. Additionally, these opinions are extreme and are not well supported by the evidence showing otherwise normal physical functioning. However, I have given Dr. Pepe's specific, function-by-function assessments some weight. These assessments are somewhat consistent with the evidence of pain and decreased range of motion in the claimant's shoulders, particularly on the right, as well as her history of arthroscopic surgery. Accordingly, I find these opinions are somewhat persuasive evidence of a limitation to light work with occasional pushing, pulling, and overhead reaching using the right upper extremity, as well as frequent overhead reaching using the left upper extremity.

Dr. Lipschultz also took the claimant off of work or gave her modified duties, such as no overhead lifting or no lifting with the right upper extremity, on several occasions. The record contains similar opinions from other workers compensation providers, as well. However, in July 2014, Dr. Lipschultz opined that the claimant was not permanently disabled. Dr. Lipschultz's opinions are not entitled to controlling weight, for reasons explained above. Moreover, I have given these opinions little weight. They were given close in time to the claimant's injury and do not appear intended to constitute permanent functional restrictions. Furthermore, the opinions that the claimant was disabled or could not work are extreme and not supported by the clinical examination findings.

. . . .

In sum, the above residual functional capacity assessment is supported by the medical evidence of record, as well as the opinions of the State agency medical . . . consultants. Specifically, bilateral shoulder pain related to rotator cuff tears and other injuries, as well as a history of surgery on the right shoulder, could reasonably limit the claimant to light work with occasional pushing, pulling, and overhead reaching using the right upper extremity, as well as frequent overhead reaching with the left upper extremity. . . .

(Tr. 23-25 (internal citations omitted).)

Based on the foregoing, it is clear that the ALJ did not improperly substitute his own medical judgment in determining Watts' RFC as to his right and left shoulder impairments. The ALJ gave the opinions of the state agency medical consultants ("SAMCs") "considerable weight" and the opinions of Dr. Pepe relating to the function-by-function assessments of Watts' ability to

use her shoulders "some weight." While Watts' complains that there is no evidence supporting the ALJ's determination that Watts can reach overhead frequently with the left upper extremity, the Court disagrees. As to Watts' left shoulder and extremity, the ALJ imposed a more restrictive RFC determination than found by the SAMCs after carefully analyzing all the evidence in the record, including the opinions of Dr. Pepe and his function -by-function assessments.

As to Watts' claims regarding *Ripley v. Chater*, the Court finds that such case is distinguishable from the facts in this case. In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The Fifth Circuit rejected the Commissioner's argument that the medical evidence that discussed the extent of the claimant's injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all of the relevant evidence in the record. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005); 20 C.F.R. §§ 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See id*; *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). Contrary to the facts in *Ripley*, in this case, there are multiple medical opinions in the record that assess the effects of Watts' functional impairments on

her ability to work. The ALJ properly considered the evidence as a whole, utilizing not only parts of the opinions of the SAMCs and Dr. Pepe, but also the other medical evidence in the record that included opinions from several doctors, treatment notes, and the testimony of Watts, to determine Watts' RFC and the effect Watts' impairments had upon her ability to work. The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g.*, *Muse*, 925 F.2d at 790. Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required as to this issue.[4]

### B. Failure to Incorporate Limitations Relating to Carpal Tunnel Syndrome

Watts also argues that the ALJ erred by finding at step two that her carpal tunnel syndrome was a severe impairment but then failing to include any limitations in the RFC determination relating to such impairment. (Pl.'s Br. at 7-8.) Specifically, Watts states:

> The ALJ determined that the Plaintiff has the severe impairment of right carpal tunnel syndrome. As noted by the ALJ, electrodiagnostic studies found moderately abnormal medial values at the right wrist, suggestive of carpal tunnel syndrome; and physical examination found positive to Tinel's and Phalen's signs on the right. Physical therapy assessments found restriction of wrist extensors and decreased grip strength. Median nerve compression test was also positive on the right. The Plaintiff was given injections into her right wrist to relieve her carpal tunnel symptoms.
>
> However, in his residual functional capacity assessment, the only limitations described by the ALJ were that the Plaintiff can occasionally push and pull with the right upper extremity; occasionally perform overhead reaching with the right upper extremity; and frequently perform overhead reaching with the left upper extremity. The Plaintiff submits that these limitations do not encompass the

---

[4] As noted above, an ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins*, 2009 WL 1542466, at *5 (citations omitted).

expected functional limitations which would result from severe carpal tunnel syndrome.

(Pl.'s Br. at 7 (internal citations omitted).)

In this case, as set forth above, the ALJ found at step two that Watts had several severe impairments, including right carpal tunnel syndrome. (Tr. 19.) In the RFC determination, again as noted above, the ALJ found that, as to Watts' extremities, Watts had the RFC to perform light work except that she can occasionally push and pull with the right upper extremity and occasionally perform overhead reaching with the right upper extremity and frequently perform overhead reaching with the left upper extremity. (Tr. 21.) In making such a determination, the ALJ, in addition to the information set forth above, also noted, *inter alia*, the following as to Watts' carpal tunnel syndrome, hands, and wrists:

> The claimant's right carpal tunnel syndrome does not meet the requirements of listing 11.14. . . .
>
> . . . .
>
> . . . Additionally, the claimant testified that she had carpal tunnel syndrome in both wrists, worse on the right, which affected her ability to grip items. The claimant acknowledged that she did most of her normal household chores, but said that she had to modify the way she did them because she could not use her right arm. Furthermore, the claimant testified that she slept poorly due to pain, and she indicated that she took two 30-minute breaks per day while doing her normal activities.
>
> . . . .
>
> The record evidence does not establish that bilateral shoulder pain and right arm symptoms from rotator cuff tears and carpal tunnel syndrome would prevent the claimant from sustaining light work with occasional pushing, pulling, and overhead reaching using the right upper extremity, and frequent overhead reaching using the left upper extremity. . . .
>
> The claimant did have 4/5 strength on an initial physical therapy evaluation in February 2013, as well as positive impingement signs; however, when she returned for medical follow-up the next day, she had 5/5 strength with intact sensation, normal grip, and only some restriction in range of motion. . . .

> . . . .
>
> . . . A July 11, 2016 electromyogram (EMG) also showed moderately abnormal medial values at the right wrist, suggestive of carpal tunnel syndrome, and Dr. Mikiel noted positive Tinel's and Phalen's signs on the right and with lateral epicondyle tenderness in August 2016. The claimant subsequently began a course of physical therapy for bilateral elbow pain, during which she was noted to have mild restrictions of wrist extensors with decreased grip strength, but she reported having only mild-to-moderate difficulty with activities of daily living. The claimant testified that she had been prescribed medication for pain but took mostly ibuprofen, as well as using a heating pad and massage at times to relieve her symptoms. . . .

(Tr. 20-23 (internal citations omitted).)

As to Watts' claim that it was prejudicial for the ALJ to find at Step Two that Watts had a severe impairment of carpal tunnel syndrome and then not include any limitations in the RFC to account for such syndrome, the Court notes that "having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Sec. of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987). In other words, the consideration of whether a claimant's impairments are severe at Step Two is a different inquiry than an ALJ's assessment of the claimant's RFC. *See Gutierrez*, 2005 WL 19994289, at *9 ("A claimant is not entitled to social security disability benefits merely upon a showing that she has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *Boyd*, 239 F.3d at 706 ("The ALJ's finding that [the claimant] had "a combination of impairments that is severe" did not foreclose a finding that [the claimant] had a [RFC] to perform a range of light work, and is not necessarily inconsistent with the finding."); *Quigley v. Astrue*, No. 4:09-CV-402-A, 2010 WL 5557500, at *8 (N.D. Tex. Sept. 8, 2010).[5]

---

[5] *But see Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *7 (N.D. Tex. Sept. 9, 2011); *Norman v. Astrue*, No. SA-10-CA-849-XR, 2011 WL 2884894, at *5 (W.D. Tex. July 18, 2011).

In this case, the ALJ was aware of and specifically discussed Watts' carpal tunnel syndrome but did not find that the substantial evidence in the record supported including any specific limitations in the RFC determination for such impairment beyond the limitations on pushing and pulling and overhead reaching. Substantial evidence supports the ALJ's decision in this regard, and remand is not required.

## C. Credibility Determination

Watts also argues that the ALJ erred in failing to consider medical opinion evidence in determining Watts' credibility. (Pl.'s Br. at 8-10.) Specifically, Watts states:

> The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; "however, the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." The Plaintiff submits that in making this determination, the ALJ failed to consider medical opinion evidence.
>
> At both the initial and reconsideration levels, the State Agency medical consultants determined that not only were the Plaintiff's medically determinable impairments capable of producing the symptoms which she described; but that her "statements about the intensity, persistence, and functionally limiting effects of the symptoms (are) substantiated by the objective medical evidence alone." The ALJ never referred to these opinions by the State Agency medical consultants in assessing Plaintiff's credibility."

(Pl.'s Br. at 8-9 (internal citations and footnotes omitted).)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529; SSR 16-3P, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). Once he finds impairment, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(b); SSR 16-3P, 2016 WL 1119029, at *2. A claimant's statements about pain and other symptoms are not

conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that she is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 404.1529.

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of both the objective medical, and other evidence in the record, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 16-3P, 2016 WL 1119029, at *9. When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities;[6] (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3P, 2016 WL 1119029, at *7. An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints.

---

[6] "Specifically, inconsistencies between a claimant's testimony about her limitations and her daily activities may be quite relevant in evaluating credibility." See *Leggett*, 67 F.3d at 565 n.12; *Copenhaver v. Astrue*, No. A-09-CA-838-SS, 2011 WL 891617, at *12 (W.D. Tex. Mar. 11, 2011).

*Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

Contrary to Watts' argument, the Court finds that the ALJ cited to substantial medical evidence in support of his credibility determination. In evaluating Watts' credibility, the ALJ first set out the standard for evaluating Watts' credibility. (Tr. 21.) Then, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 21-22.) In making this determination, the ALJ carefully analyzed all the evidence in the record, including the opinions of the SAMCs, Watts' own testimony, and other evidence in the record. (Tr. 18-27.) In addition, the ALJ considered numerous other factors, as required, in making his credibility decision, including Watt's daily activities, medications, and other treatments. Specifically, the ALJ stated:

> The claimant subsequently began a course of physical therapy for bilateral elbow pain, during which she was noted to have mild restrictions of wrist extensors with decreased grip strength, but she reported having only mild-to-moderate difficulty with activities of daily living. The claimant testified that she had been prescribed medication for pain but took mostly ibuprofen, as well as using a heating pad and massage times to relieve her symptoms. . . .
>
> In assessing the claimant's complaints, I have also considered other relevant factors, such as her daily activities and work history. The claimant testified that she drove and did most normal activities, but she took longer than she used to and had to adjust the way she performed tasks to accommodate her arm. The claimant also acknowledged that she had performed childcare from her home for approximately two years during the period for which she was claiming disability, stopping only when the child became too heavy for her to lift safely. However, this testimony is not necessarily inconsistent with the ability to lift and carry 20 pounds occasionally, consistent with light work. Considering the claimant's activity level

during the relevant period, I conclude that this factor does not tend to show an inability to perform the range of work identified in this decision.

(Tr. 23-24.) The ALJ properly evaluated the entire record and numerous factors in making his credibility determination and did not err in failing to rely on one statement made by the SAMCs. Because substantial evidence supports the ALJ's credibility determination, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 26, 2020** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 12, 2020.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv